# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA ARAGONE, on behalf of the General Public of the District of Columbia,<br><br>1701 16th Street, N.W., Apt. 520<br>Washington, D.C. 20009,<br><br>          *Plaintiff*,<br>v.<br><br>PIERRE FABRE USA INC.,<br><br>8 Campus Drive, 2d Floor<br>Parsippany, N.J. 07054,<br><br>          *Defendant*. | Case No. 23-cv-2308<br><br>[D.C. Super. Ct. No. 2023-CAB-003415] |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Pierre Fabre USA Inc. ("Pierre Fabre"), through counsel and pursuant to 28 U.S.C. §§ 1331, 1332(a) and 1446, hereby removes this action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia. As grounds for removal, Pierre Fabre alleges as follows:

### BACKGROUND

1. On June 11, 2023, Maria Aragone ("Plaintiff" or "Aragone"), on her own behalf and on behalf of the General Public of the District of Columbia, filed a complaint against Pierre Fabre in the Superior Court for the District of Columbia, styled *Aragone v. Pierre Fabre USA Inc.*, Case No. 2023 CAB 003415. A true and correct copy of the summons and Complaint is included in the attached Exhibit A. Counsel for Pierre Fabre voluntarily accepted service of a copy of the summons and the Complaint via electronic mail on July 10, 2023. A true and correct copy of the acceptance of service is included in the attached Exhibit B.

2.       The gravamen of Plaintiff's Complaint is that Pierre Fabre violated the District of Columbia Consumer Protection Procedures Act ("CPPA") when she purchased a bottle of Pierre Fabre's Klorane-brand "Dry Shampoo with Oat Milk – Ultra Gentle" from Amazon.com. *See, e.g.*, Ex. A, Compl. ¶¶ 2, 18. Plaintiff alleges that, months before her purchase, a third-party laboratory tested a batch of this dry shampoo for benzene, a purported carcinogen, and reported a test result in excess of FDA's recommended benzene threshold for drug products. *Id.* ¶¶ 3–4 & n.1, 38, 44. According to Plaintiff, Pierre Fabre's dry shampoo cosmetic products are therefore "defective" because they are "adulterated and/or contaminated with benzene." *Id.* ¶¶ 2–3. And because these products' labeling and advertising do not disclose the presence of benzene, Plaintiff alleges that she and "[t]he DC General Public" were "deceived into purchasing Product" "in violation of D.C. and federal law." *Id*. ¶¶ 6, 66.

3.       Plaintiff sets forth two claims under the CPPA. *See id.* ¶¶ 69–79. These claims are premised on Pierre Fabre's alleged breach of as many as seven claimed warranties and violation of at least eight asserted CPPA subsections. *See id.* ¶¶ 13, 71–72. In addition, Plaintiff asserts a third claim for "breaches" of the District of Columbia Commercial Code as "an independent cause of action, for which Plaintiff seeks damages on his [*sic*] own behalf." *Id.* ¶ 81.

4.       Plaintiff seeks various forms of relief for these asserted violations of the CPPA and breaches of the Commercial Code, including (i) statutory damages, trebled, for Plaintiff, but limited to no more than $74,000; (ii) attorneys' fees; and (iii) an injunction against Pierre Fabre's alleged violations of the CPPA. *Id.* at 23–24 (Prayer for Relief).

**VENUE AND JURISDICTION**

5. Venue is proper in this Court, pursuant to 28 U.S.C. §§ 88, 1391, 1441(a), and 1446(a), because this judicial District embraces the District of Columbia Superior Court, which is the district and division where this case was originally pending.

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and Pierre Fabre, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. As this is a civil action arising, in part, under the Food, Drug & Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"), this Court also has federal question jurisdiction over this case under 28 U.S.C. § 1331.

8. All other requirements for removal here have been satisfied.

**BASES FOR REMOVAL**

I. **This Court Has Original Jurisdiction Under 28 U.S.C. § 1332(a)**

9. This Court has original jurisdiction under 28 U.S.C. § 1332(a) because (i) this case involves citizens of different States and (ii) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

   A. **Diversity of Citizenship Exists.**

10. The Complaint alleges that Plaintiff Aragone "is a resident of Washington, D.C." Ex. A, Compl. ¶ 11. Upon information and belief, Plaintiff is domiciled in Washington, D.C. and therefore a citizen of the District of Columbia for purposes of diversity jurisdiction.

11. When analyzing diversity jurisdiction, "[a] corporation is a citizen of its place or places of incorporation, as well as its principal place of business." *CostCommand, LLC v. WH Administrators, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016).

12. The Complaint alleges that Pierre Fabre is a Delaware corporation with its headquarters and principal place of business at 8 Campus Drive, Parsipanny, New Jersey. Ex. A, Compl. ¶ 12.

13. Because Plaintiff is a citizen of the District of Columbia, and Defendant is a citizen of Delaware and New Jersey, the complete diversity requirement of 28 U.S.C. § 1332 is satisfied.

### B. The Amount in Controversy Exceeds $75,000.

14. The amount-in-controversy requirement of 28 U.S.C. § 1332 is also satisfied.

15. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*; *see also* 28 U.S.C. § 1446(c)(2)(A)(ii).

16. Courts analyzing the amount-in-controversy requirement for CPPA claims consider the value of (i) statutory damages; (ii) attorney fees; and (iii) the cost of an injunction. *See, e.g.*, *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297 (D.D.C. 2013).

17. Plaintiff's Complaint states that she is seeking (i) "statutory damages, trebled, for Plaintiff, except that [she] disclaims any damages in excess of $74,000"; (ii) "attorneys' fees"; and (iii) "an injunction on behalf of the General Public against the Defendant's violations of the CPPA." Ex. A, Compl. at 23–24 (Prayer for Relief).

#### 1. Statutory Damages

18. With respect to statutory damages, the CPPA authorizes plaintiffs to sue for "[t]reble damages, or $1,500 per violation, whichever is greater." D.C. Code § 28-3905(k)(2)(A). Here, Plaintiff asserts two CPPA claims.

19. The first alleges that Pierre Fabre's sale of Klorane dry shampoo to Plaintiff violated the CPPA by breaching express and implied warranties in at least seven ways. *See* Ex. A, Compl. ¶¶ 71–72 (asserting that "Defendant has failed to honor" three express warranties under D.C. Code § 28-313 and four requirements for merchantability under D.C. Code § 28-314(b)(i)–(iv)); *id.* ¶ 76 ("Defendant's breaches of its Express Warranties and the Implied Warranty of Merchantability, and its sale of consumer goods in a condition and in a manner inconsistent with D.C. law and contrary to the operation and requirements of federal law, constitute unlawful trade practices, which violate the rights of the D.C. consumers, including the Plaintiff, protected by the CPPA."). Plaintiff's Count I thus asserts seven violations of the CPPA.

20. Plaintiff's second CPPA claim separately alleges that Pierre Fabre's sale of Klorane dry shampoo to Plaintiff violated at least eight subsections of the CPPA. *See id.* ¶ 13 (asserting subsections (a), (b), (d), (e), (f), (f)-(1), (h), and (x) of § 28-3904); *id.* ¶ 78 ("Defendant violated the various provisions of Section 3904 of the CPPA, set forth in more detail in paragraph 13, above."). Plaintiff's Count II thus asserts eight additional violations of the CPPA.

21. Plaintiff's two CPPA claims alone therefore implicate at least 15 statutory violations and, therefore, statutory damages of at least $22,500. *See, e.g.*, *Cannon v. Wells Fargo Bank N.A.*, 908 F. Supp. 2d 110, 113–14 (D.D.C. 2012) (recognizing that statutory damages of $1,500 apply per CPPA subsection allegedly violated for purposes of calculating amount in controversy); *see also Pleznac v. Equity Residential Mgmt. LLC*, No. 17-cv-2732, 2018 WL 10196622, at *3 n.2 (D.D.C. May 8, 2018) (recognizing that "courts in this district" have allowed CPPA plaintiffs to "obtain multiple damages awards based on a single transaction").[1]

---

[1] In the alternative, the Court may credit $74,000 in statutory damages toward the amount in controversy due to the Complaint's disclaimer of "any damages in excess of $74,000." Ex. A, Compl. at 23–24 (Prayer for Relief); *see, e.g.*, *Gutierrez v. Swift Transp. Co.*, No. EP-10-cv-406-

### 2. Attorneys' Fees

22. Plaintiff's request for attorneys' fees further increases the amount in controversy. Courts evaluating the amount in controversy in CPPA actions have calculated a representative plaintiff's attorneys' fees by applying a one-third multiplier to the overall requested judgment. *See, e.g., Zuckman*, 958 F. Supp. 2d at 301. Because Plaintiff seeks statutory damages of at least $22,500, Plaintiff's request for attorneys' fees thus increases the amount in controversy by an additional one-third of that amount (or $7,500), for a running total of at least $30,000 in controversy.

### 3. The Requested Injunction

23. Plaintiff also requests an injunction "against the Defendant's violations of the CPPA." Ex. A, Compl. at 24 (Prayer for Relief). If Plaintiff were to prevail on her claims, such an injunction would require Pierre Fabre to change the labeling and advertising for all units of its "Klorane – Oat Milk Ultra Gentle" dry shampoo—the product Plaintiff alleges that she purchased—sold in the District of Columbia.[2] *See id.* ¶ 18. And because Pierre Fabre sells many of its dry shampoo products to independent retailers, *id.* ¶ 2, who in turn sell the products to consumers throughout the United States, *see id.* ¶ 18 (receipt indicating Amazon.com Services LLC as Plaintiff's retailer), Pierre Fabre cannot readily identify all of its dry shampoo products that have been or will be sold to D.C. consumers. Unable to make targeted changes to just those

---

KC, 2011 WL 318294, at *3–4 (W.D. Tex. Jan. 28, 2011) (courts may consider a "request[] for damages such as that made by Plaintiff for a sum 'not in excess' of a specified amount just below the jurisdictional minimum as . . . a request for that specific sum").

[2] It likely would also require Pierre Fabre to do the same for its "Klorane – Dry Shampoo with Nettle Oil Control," which Plaintiff contends was similarly contaminated with benzene. *See id*. ¶ 44; *see also id.* ¶ 57 ("The manufacture of any misbranded or adulterated cosmetic is prohibited under federal law and District of Columbia law.").

products' labels and associated advertising, to comply with the requested injunction, Pierre Fabre would likely be forced to change the labeling and advertising for *all* of its "Klorane – Oat Milk Ultra Gentle" dry shampoo products sold to any retailer or distributor that itself sells to D.C. consumers. The costs to Pierre Fabre of relabeling and changing the advertising for nearly an entire product line in the United States would far surpass the $45,001 required for the amount in controversy to exceed $75,000.

\*   \*   \*

24. Thus, the amount-in-controversy element is satisfied in this case for purposes of diversity jurisdiction, and solely for that purpose.

25. For all of these reasons, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), and this case is removable pursuant to 28 U.S.C. § 1441(a).

**II.     Alternatively, This Court Has Original Jurisdiction Under 28 U.S.C. § 1331**

26. The Court also has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims directly implicate the regulations, rulemaking, and guidance of the Food & Drug Administration ("FDA") under the FDCA.

27. The Supreme Court has recognized that federal question jurisdiction exists over claims asserted under state law if the state-law claims implicate substantial federal questions. *Grable & Sons Metal Prods., Inc. v. Dante Eng'g & Mfg.*, 545 U.S. 308, 314–15 (2005). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law," in part to promote the "uniformity that a federal forum offers on federal issues." *Id.* at 312. The test for whether a federal court has jurisdiction under *Grable* is not whether a federal statute provides a private right of action parallel to the state-law claims alleged by the plaintiff, but whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which

a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. That is precisely the case here.

### A. Plaintiff's Claims Necessarily Raise a Stated Federal Issue.

28.   First, Plaintiff's CPPA and warranty claims necessarily raise the stated federal issue of whether the Klorane dry shampoo she purchased was misbranded or adulterated under federal law. As the Complaint alleges, "[d]ry shampoo products are considered cosmetics that are regulated by the FDA." Ex. A, Compl. ¶ 37; *see also id.* ¶ 52 (citing definition of "cosmetic" in 21 U.S.C. § 321(i)). FDA has issued guidance establishing a "permissible level[]" of two parts per million (or "ppm") of benzene in drug products.³ *Id.* ¶¶ 4, 50; *see also id.* ¶ 62. But because dry shampoo is not a drug, Plaintiff claims that "*any* amount of benzene is unacceptable and should not be employed in the manufacture of the [cosmetic] Product." *Id.* ¶ 53. Based on a purported test result of 5.72 ppm of benzene obtained by third-party laboratory Valisure on a lot of Klorane dry shampoo, Plaintiff alleges that Pierre Fabre has violated the FDCA's prohibitions on "[t]he manufacture," "introduction into commerce," and "receipt in interstate commerce" of "any misbranded or adulterated cosmetic." *Id*. ¶¶ 57–61 (quoting 21 U.S.C. §§ 331(a) & (c), 351(a)(2)(B), 352(a)(1)). Thus, the gravamen of Plaintiff's claims is that "[a]s a result of benzene contamination in the Product, it is considered adulterated and misbranded," and that "Defendant has not disclosed to consumers the presence of benzene in the Product's labelling, advertising or otherwise, in violation of D.C. *and federal law*." *Id.* ¶¶ 6, 62 (emphasis added).

---

³ Plaintiff premises her allegation that benzene is a carcinogen on a report from the National Institute of Health's National Toxicology Program, findings of the International Agency for Research on Cancer, statements from the Centers for Disease Control, classifications established by the World Health Organization, and recommendations of the National Institute for Occupational Safety and Health. Ex. A, Compl. ¶¶ 48–51.

29. The state-law claims Plaintiff asserts require the Court to determine how these federal laws and regulations apply, if at all, to cosmetics, and whether the amount of benzene purportedly contained in Klorane dry shampoo establishes that the products are adulterated and/or misbranded under federal law. For example, Plaintiff's CPPA claims assert violations of subsection (x) of the statute, which renders it an unfair or deceptive trade practice to "sell consumer goods in a condition or manner not consistent with that warranted . . . *by operation or requirement of federal law.*" D.C. Code § 28-3904(x) (emphasis added); *see* Ex. A, Compl. ¶¶ 13, 78–79. Similarly, even Plaintiff's CPPA count predicated on Pierre Fabre's alleged breaches of warranties invokes subsection (x)'s prohibition on sales of consumer goods that are "contrary to the operation and requirements of federal law." *Id.* ¶ 76. Accordingly, Plaintiff's claims expressly raise and require adjudication of whether the Klorane dry shampoo she purchased was misbranded or adulterated under federal law based on FDA's 2 ppm benzene guidance for drugs.

30. Because Plaintiff's claims necessarily raise a stated federal issue, the first prong of *Grable* supports the existence of federal-question jurisdiction here. *See, e.g.*, *Bender v. Jordan*, 623 F.3d 1128, 1130–31 (D.C. Cir. 2010) (recognizing federal-question jurisdiction under *Grable* where plaintiff alleged state-law claim that turned "almost entirely on the proper interpretation" of federal regulation governing "the conduct of a federal agency").

### B. The Issue Is Actually Disputed.

31. Second, there is an actual dispute over the stated federal issue. According to Plaintiff, if any sample of a single batch of a cosmetic product has tested in excess of 2 ppm benzene, such products are adulterated or misbranded "in violation of D.C. and federal law" if the defendant "has not disclosed to consumers the presence of benzene in the Product's labelling, advertising, or otherwise." Ex. A, Compl. ¶ 6. But Pierre Fabre disputes Plaintiff's claim that a

cosmetic is adulterated or misbranded merely because one batch's test results purportedly exceeded FDA's recommended benzene threshold for drugs. For example, even setting aside the well-known methodological flaws in Valisure's testing,[4] in contrast to the regulations governing drug manufacturers, federal regulations do not presently require cosmetics manufacturers to comply with current good manufacturing practices.[5]

32.     The second prong of *Grable* thus favors a finding of federal-question jurisdiction in this case.

### C. The Issue Is Substantial.

33.     Likewise, this disputed issue is a substantial federal question because it is important "to the federal system as a whole," *Gunn v. Minton*, 568 U.S. 251, 260 (2013), "a decision on the federal question will resolve the case," *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007), and "the issue is not anomalous or isolated," *id.* Apart from resolving the case, a decision on the substantial federal question here will implicate the uniform regulations and federal agency decision-making governing the labeling and manufacturing of cosmetic products in the United States. What is more, at least ten similar cases are pending in federal court around the country alleging claims for economic loss under various States' consumer protection laws based on Valisure's testing of dry shampoo products. *See Bojko v. Pierre Fabre USA Inc.*, No. 1:22-cv-06728 (N.D. Ill.), Dkt. No. 28 (listing "pending actions related to alleged benzene contamination

---

[4] *See, e.g.*, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, __ F. Supp. 3d __, 2022 WL 17480906, at *2 (S.D. Fla. Dec. 6, 2022) (noting FDA's conclusion that "Valisure's laboratory equipment created the very substance for which it was testing" in litigation concerning different alleged contaminant).

[5] New legislation would require FDA to promulgate regulations concerning current good manufacturing practices for cosmetics in the future. *See* Consolidated Appropriations Act of 2023, H.R. 2617, 117th Cong. § 3502 (2022).

in dry shampoo products" as of March 15, 2023). This Court's decision on the interplay between FDA's 2 ppm benzene guidance and federal regulations governing misbranded and adulterated cosmetics will thus have persuasive value in those cases.

34. Accordingly, *Grable*'s third prong is satisfied here as well. *Cf. Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 519–20 (11th Cir. 2000) (recognizing federal-question jurisdiction after removal of state-law RICO action because "whether the alleged violations of [federal law] constitute federal mail and wire fraud crimes, is a matter of considerable magnitude and substantial federal interest").

### D. Proceeding in a Federal Forum Will Not Disturb the Federal-State Judicial Balance.

35. Finally, by proceeding in this Court, this case will not disturb any congressionally approved balance of federal and state judicial responsibilities. "In enacting the FDCA in 1938, Congress set out to provide some *national uniformity* to the manufacture and sale of cosmetics … which until that point had been regulated exclusively by the various laws of the states." *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 35 (2d Cir. 2020) (emphasis added). This purpose of uniformity would be undermined, rather than strengthened, by state-court adjudication of this dispute—especially in light of the potential conflict with the numerous other federal courts that are presently examining identical issues. And rather than requiring fact-bound and situation-specific determinations that a state court may be competent to undertake, the Complaint here implicates the sort of "context-free inquiry into the meaning of federal law" that favors a federal court answering the essential question presented. *Flavell v. Int'l Bank for Recon. & Dev.*, Civ. No. 20-623, 2021 WL 1146301, at *7 (D.D.C. Mar. 25, 2021); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701–02 (2006) (distinguishing *Grable* on the grounds that it did not present a "fact-bound and situation-specific" issue of federal law).

36. Thus, the fourth prong of *Grable* also supports the existence of federal-question jurisdiction here.

### III. All Other Removal Requirements Are Satisfied

37. Pierre Fabre has timely removed this action within thirty (30) days of service. Notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Pierre Fabre accepted electronic service of the summons and Complaint on July 10, 2023. *See* Ex. B. Accordingly, Pierre Fabre's Notice of Removal is timely because it was filed on or before August 9, 2023, within thirty days of the July 10, 2023 service date.

38. Pursuant to 28 U.S.C. § 1446(a), a copy of the current Superior Court of the District of Columbia case docket, along with a copy of all process, pleadings, and orders served upon Pierre Fabre, is attached hereto as Exhibit C. The civil cover sheet is also attached hereto as Exhibit D.

39. In accordance with 28 U.S.C. § 1446(d), Pierre Fabre will provide written notice of the filing of this Notice to Plaintiff, and a copy of this Notice will be filed with the Clerk of the Superior Court of the District of Columbia. The Notice of Filing of Notice of Removal to be filed with the Superior Court is attached hereto as Exhibit E.

40. No previous notice of removal has been filed or made with this Court for the relief sought herein.

### RESERVATION OF RIGHTS/DENIAL OF LIABILITY

41. Nothing in this Notice is intended to or should be construed as any type of express or implied admission by Pierre Fabre of any fact alleged by Plaintiff, of the validity or merits of any of Plaintiff's claims and allegations, or of any liability for the same, each and all of which are

expressly denied, or as to any type of express or implied waiver or limitation of any of Pierre Fabre's rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.

## CONCLUSION

WHEREFORE, Defendant Pierre Fabre respectfully requests that the above-captioned action now pending in the Superior Court of the District of Columbia be removed to this United States District Court for the District of Columbia, and that the Court retain jurisdiction for all further proceedings in this matter.

Dated: August 9, 2023

Respectfully submitted,

By: /s/ *Taylor T. Lankford*
Taylor T. Lankford
D.C. Bar. No. 1002758
**KING & SPALDING LLP**
1700 Pennsylvania Ave., NW
Suite 900
Washington, D.C. 20006
Tel: (202) 626-5514
Fax: (202) 626-3737
tlankford@kslaw.com

Robert B. Friedman (*pro hac vice* forthcoming)
Madison H. Kitchens (*pro hac vice* forthcoming)
Christopher P. Eby (*pro hac vice* forthcoming)
**KING & SPALDING LLP**
1180 Peachtree St. NE, Suite 1600
Atlanta, GA 30309
(404) 572-4600
rfriedman@kslaw.com
mkitchens@kslaw.com
ceby@kslaw.com

***Attorneys for Defendant Pierre Fabre USA Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on August 9, 2023, with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties and counsel of record by operation of the Court's CM/ECF system. I also certify that a true and correct copy of the foregoing Notice has been furnished via U.S. mail and/or electronic mail, to all counsel of record on the Service List, this 9th day of August 2023.

/s/ *Taylor T. Lankford*
Taylor T. Lankford
D.C. Bar. No. 1002758
**KING & SPALDING**
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel: (202) 626-5514
Fax: (202) 626-3737
tlankford@kslaw.com

***Counsel for Defendant Pierre Fabre USA Inc.***

**SERVICE LIST**

Thomas C. Willcox
1701 16th Street, N.W. Suite 211
Washington DC 20009
thomaswillcox@willcoxlaw.com.co