# Exhibit A

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH
## INFORMATION SHEET

Maria Aragone

_____
Plaintiff(s)

vs

Pierre Fabre USA Inc

_____
Defendant(s)

Case Number: **2023-CAB-003415**

Date: 06/11/2023

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Thomas Willcox | Relationship to Lawsuit |
| Firm Name:<br>Thomas Willcox, Attorney at law | ☑ Attorney for Plaintiff |
| Telephone No.:  DC Bar No.:<br>(202) 239-2762   **445135** | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury      ☑ 6 Person Jury      ☐ 12 Person Jury
Demand: $ 10,000.00                    Other: injunctive relief

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar #:_____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**CONTRACT**
- ☐ Breach of Contract
- ☐ Breach of Warranty
- ☐ Condo/Homeowner Assn. Fees
- ☐ Contract Enforcement
- ☐ Negotiable Instrument

**COLLECTION/INS. SUB**
- ☐ Debt Collection
- ☐ Insurance Subrogation
- ☐ Motion/Application for Judgment by Confession
- ☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
- ☐ Breach of Contract
- ☐ Discrimination
- ☐ Wage Claim
- ☐ Whistle Blower
- ☐ Wrongful Termination

---

**REAL PROPERTY**
- ☐ Condo/Homeowner Assn. Foreclosure
- ☐ Declaratory Judgment
- ☐ Drug Related Nuisance Abatement
- ☐ Ejectment
- ☐ Eminent Domain
- ☐ Interpleader
- ☐ Other
- ☐ Quiet Title
- ☐ Specific Performance

- ☐ **FRIENDLY SUIT**
- ☐ **HOUSING CODE REGULATIONS**
- ☐ **QUI TAM**
- ☐ **STRUCTURED SETTLEMENTS**

---

**ADMINISTRATIVE PROCEEDINGS**
- ☐ Administrative Search Warrant
- ☐ App. for Entry of Jgt. Defaulted Compensation Benefits
- ☐ Enter Administrative Order as Judgment
- ☐ Libel of Information
- ☐ Master Meter
- ☐ Petition Other

- ☐ Release Mechanics Lien
- ☐ Request for Subpoena

**MALPRACTICE**
- ☐ Medical – Other
- ☐ Wrongful Death

**AGENCY APPEAL**
- ☐ Dangerous Animal Determination
- ☐ DCPS Residency Appeal
- ☐ Merit Personnel Act (OEA)
- ☐ Merit Personnel Act (OHR)
- ☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**

    Currency

    Other

    Real Property

    Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**

    Birth Certificate Amendment

    Death Certificate Amendment

    Gender Amendment

    Name Change

**TORT**

    Abuse of Process

    Assault/Battery

    Conversion

    False Arrest/Malicious Prosecution

    Libel/Slander/Defamation

    Personal Injury

    Toxic Mass

    Wrongful Death (Non-Medical Malpractice)

---

**GENERAL CIVIL**

    Accounting

    Deceit (Misrepresentation)

    Fraud

    Invasion of Privacy

    Lead Paint

    Legal Malpractice

    Motion/Application Regarding Arbitration Award

    Other - General Civil

    Product Liability

    Request for Liquidation

    Writ of Replevin

    Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**

    Asbestos

**MORTGAGE FORECLOSURE**

    Non-Residential

    Residential

**STATUTORY CLAIM**

    Anti – SLAPP

    Consumer Protection Act

    Exploitation of Vulnerable Adult

    Freedom of Information Act (FOIA)

    Other

**TAX SALE FORECLOSURE**

    Tax Sale Annual

    Tax Sale Bid Off

---

**VEHICLE**

    Personal Injury

    Property Damage

**TRAFFIC ADJUDICATION APPEAL**

**REQUEST FOR FOREIGN JUDGMENT**

_____      _____

     Filer/Attorney's Signature                         Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

_____
                                                                    Plaintiff
                    vs.

                                                                                Case Number    2023-CAB-003415
_____
                                                                    Defendant

## SUMMONS

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

      You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____                            _Clerk of the Court_
Name of Plaintiff's Attorney

_____          By  _____
Address                                                                         Deputy Clerk

_____
                                                                             Date      **July 6, 2023**

_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

   IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

   If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____                           *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

_____          Por: _____
Dirección                                                                              Subsecretario

_____
                                                                       Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화해 주십시오.    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| Maria Aragone ) | |
| 1701 16th St., N.W., Apt. 520 ) | 6/11/23 |
| Washington, D.C. 20009 ) | |
| ) | |
| on behalf of the General Public of the ) | Civil Action No:    2023-CAB-003415 |
| District of Columbia ) | |
| ) | |
|        Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Pierre Fabre USA Inc. ) | |
| 8 Campus Drive, 2nd Fl. ) | Jury Trial Demanded |
| Parsippany, New Jersey 07054 ) | |
| ) | |
| Registered Agent: ) | |
| CT Corporation System | |
| 289 S. Culver St. | |
| Lawrenceville, Georgia 30046 | |
| | |
|        Defendant | |

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Maria Aragone ("Plaintiff"), by and through her counsel, individually and on behalf of the General Public of the District of Columbia, brings this action against Pierre Fabre USA Inc. ("Pierre Fabre" or the "Defendant"), and alleges the following based upon information, belief and the investigation of counsel:

**<u>NATURE OF THE CASE</u>**

1.  Plaintiff Aragone brings this action on behalf of herself and the General Public in the District of

Columbia to redress a pattern of fraudulent, deceptive and otherwise improper sales and marketing practices engaged in by the Defendant.

2. Defendant distributes, markets, and sells to consumers across the United States, both in retail establishments and online, including in the District of Columbia, a dry shampoo product under the name "Klorane – Dry Shampoo with Oat Milk Ultra Gentle – All Hair Types" (the "Product").  The Product, identified below, is adulterated and/or contaminated with benzene, a known human carcinogen.

3. The Product, which Plaintiff purchased, is defective because it contains benzene, and it was formulated, designed, manufactured, marketed, advertised, distributed and sold by Defendant.

4. An independent testing agency has identified one "Lot" among several Lots of Klorane dry shampoo varieties, including the Product and other varieties, as exceeding the U.S. Food and Drug Administration's ("FDA") permissible levels of benzene in "cosmetics" and "over-the-counter drugs," listed as follows[1]:

---

[1] *See* Valisure Citizen Petition on Benzene in Dry Shampoo Products ("Citizen Petition") at 14, *available at* https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf  (last reviewed  February 10, 2023).



Page 14

**Table 3b.** Product description and single-observation results of benzene analysis on various batches of dry shampoo products in which benzene was detected at 2.00 ppm or higher.

| Brand | UPC | Lot | Description | Benzene Concentration (ppm) |
|-------|-----|-----|-------------|------------------------------|
| Not Your Mother's | 688047130517 | 21141 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz | 132 |
| Not Your Mother's | 688047130500 | 21124 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 85.4 |
| Not Your Mother's | 688047130500 | 21179 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 73.1 |
| Not Your Mother's | 688047130517 | 21181 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz | 55.3 |
| Not Your Mother's | 688047130098 | 20280 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz | 51.2 |
| Not Your Mother's | 688047130500 | 21063 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 40.1 |
| Not Your Mother's | 688047130296 | 21009 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 39.5 |
| Not Your Mother's | 688047130951 | 20353 | Blonde Moment Dry Shampoo - Hint of Blonde Tinted Powder - 7 oz | 22.9 |
| dp Hue | 810001821036 | 2101417 | Apple Cider Vinegar Dry Shampoo - 1 oz | 7.11 |
| dp Hue | 810001821012 | 2101501:32:32 | Apple Cider Vinegar Dry Shampoo - 5 oz | 6.20 |
| Klorane | 3282770200874 | FR4002 | Dry Shampoo with Oat Milk Ultra Gentle - All Hair Types - 1 oz | 5.72 |
| Not Your Mother's | 688047132290 | 21194 | Clean Freak Refreshing Dry Shampoo - Original - 1.6 oz | 4.46 |
| Batiste | 5010724529836 | RF0113 | Dry Shampoo Clean & Light Bare - 6.73 fl oz | 3.30 |
| Paul Mitchell Invisiblewear | 009531127866 | 19309 | Brunette Dry Shampoo - 4.7 oz | 2.88 |
| Paul Mitchell Invisiblewear | 009531127866 | 19007 | Brunette Dry Shampoo - 4.7 oz | 2.15 |

3

5.  As reflected in the aforementioned test results, the Lot identified above of the Product is defective because it contains significant amounts of the chemical benzene, a known human carcinogen. Consumers are of course unable to distinguish one particular lot of the Product that may have acceptable levels of benzene from another lot of the Product with levels of benzene deemed to be unsafe, such as those shown above.  Despite the resulting hazard to consumers using the Product, any Lot of which may, and at least some do, contain levels of benzene deemed to be unsafe, Defendant represents that the Product is safe and effective for its intended use,

6.  Defendant has not disclosed to consumers the presence of benzene in the Product's labelling, advertising or otherwise, in violation of D.C. and federal law.  Plaintiff has suffered economic damages due to Defendant's misconduct (as set forth below) and seeks injunctive relief on behalf of the DC General Public and statutory damages.

7.  Plaintiff Aragone seeks to enjoin such fraud, and obtain appropriate statutory damages.  She also seeks injunctive relief on behalf of the District of Columbia General Public, whose members purchased such products in the District of Columbia.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

9.  This Court has personal jurisdiction over the Defendant pursuant to D.C. Code §13-423, as Defendant sells its products online to customers in Washington, D.C.

10. In addition, a substantial part of the actions which gave rise to the causes of action at issue occurred in this jurisdiction.

## THE PARTIES

11. Plaintiff Maria Aragone is a resident of Washington, D.C.

12. Defendant is a Delaware corporation with a principal place of business in Parsippany, New Jersey. Defendant – a subsidiary of the Pierre Fabre Group, also known as Laboratoires Pierre Fabre, a French pharmaceutical and cosmetics company – is a hair products company with a number of products that it sells online and in stores throughout the United States.

### LEGAL FRAMEWORK:
### THE D.C. CONSUMER PROTECTION ACT
### AND THE INTERESTS OF THE GENERAL PUBLIC

13. The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.,* prohibits unfair or deceptive trade practices. The prohibited trade practices include, in relevant part, actions that

   (a)   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
   (b) represent that goods have characteristics, uses, or benefits that they do not have;
   (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
   (e) misrepresent as to a material fact which has a tendency to mislead;
   (f) fail to state a material fact if such failure tends to mislead;
   (f-1) use innuendo or ambiguity as to a material fact, which has a tendency to mislead;
   (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and
   (x) to sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Code, Official Code, or by operation or requirement of federal law.

5

D.C. Code § 28-3904 (Unfair or Deceptive Trade Practices).

14.  Additionally, the enforcement provisions of the CPPA are broadly construed.  Thus, for instance, as one court has stated, "the CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law prohibitions." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).

15.  The CPPA provides for treble damages, or $1,500 per violation, whichever is greater, as well as reasonable attorneys' fees, punitive damages, an injunction against the unlawful trade practice, "additional relief as may be necessary to restore the consumer money or property . . . which may have been acquired by means of the unlawful trade practice," and "any other relief the court deems proper."  D.C. Code § 28-3905(k)(1).

16.  Plaintiff brings this action on behalf of himself and on behalf of and acting for the interests of the General Public of the District of Columbia, seeking relief from Defendant's use of trade practices in violation of laws of the District of Columbia, pursuant to D.C. Code § 28-3905(k)(1).

17.  Klorane Dry shampoo, the Product, is a "consumer good" and the Defendant is a "merchant" within the meaning of the CPPA.  D.C. Code § 28-3901(1)(2) and (7).

## THE ARAGONE PURCHASE

18. On March 3rd, 2023, Plaintiff Aragone purchased a 1 oz. bottle of the Product through Amazon for $10.60.  The receipt and the online photograph of the bottle are copied herein immediately below (on the following pages):

*Figure 1*

3/6/23, 4:04 PM                                   Amazon.com - Order 114-0859978-0519443



### Final Details for Order #114-0859978-0519443
Print this page for your records.

**Order Placed:** March 3, 2023
**Amazon.com order number:** 114-0859978-0519443
**Order Total:** $10.60

## Shipped on March 4, 2023

**Items Ordered**                                                                    **Price**
1 of: *Klorane Dry Shampoo with Oat Milk, Ultra-Gentle, All Hair Types, No White Residue,*  $10.00
*Paraben & Sulfate-Free, Travel Size, 1 Ounce (Pack of 1)*
Sold by: Amazon.com Services LLC

Condition: New

**Shipping Address:**
Maria Fernanda Aragone
1701 16th Street NW, Apt 522
Washington, District of Columbia 20009
United States

**Shipping Speed:**
FREE Prime Delivery

## Payment information

**Payment Method:**                                    Item(s) Subtotal:  $10.00
Debit Card | Last digits: 2763                    Shipping & Handling:   $0.00
                                                                                       -----
**Billing address**                                    Total before tax:  $10.00
Maria Fernanda Aragone                      Estimated tax to be collected:   $0.60
1701 16th Street NW, Apt 522                                                -----
Washington, District of Columbia 20009              **Grand Total:$10.60**
United States

**Credit Card transactions**              Visa ending in 2763: March 4, 2023: $10.60

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996-2023, Amazon.com, Inc. or its affiliates

7

*Figure 2*



*Figure 3*



19. Under the CPPA, such purchase is all that is necessary to give Aragone standing to be the

Representative in this action. D.C. Code § 28-3905(k) (2001) (whose 2000 amendments replaced

the word "consumer" with "person"), which now specifies:

> (k)(1) <u>An individual</u> may, on behalf of that individual, <u>or on behalf of both the</u>
> <u>individual and the general public</u>, bring an action seeking relief from the use of a
> trade practice in violation of a law of the District when that trade practice involves
> consumer goods or services that the individual purchased or received in order to
> test or evaluate qualities pertaining to use for personal, household, or family
> purposes:

20. The remedies available include:

> (A) treble damages, or $1,500 per violation, whichever is greater, payable
> to the consumer;
> (B) reasonable attorney's fees;
> (C) punitive damages;
> (D) an injunction against the use of the unlawful trade practice;
> (E) in representative actions, additional relief as may be necessary to
> restore to the consumer money or property, real or personal, which may
> have been acquired by means of the unlawful trade practice; or
> (F) any other relief which the court deems proper.

21. The basis for Aragone's standing and the manifestation of the alleged injury in fact are similar to

those in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982).

22. In *Havens,* a national housing rights organization had a Black applicant and a white applicant

submit identical resumes to an apartment complex for housing.  The purpose of the applications

was not to obtain housing; instead, the purpose was to determine whether or not the apartment

complex was engaged in racial discrimination.   The housing complex approved the application of

the white applicant but denied the application of the Black applicant.

23. The *Havens* court held that the Black applicant had standing to sue for damages, even though he

never had any intention of moving into the apartment. The Court determined that § 804(d) of the

Fair Housing Act "established an enforceable right to truthful information concerning the

10

availability of housing," *id.* at 373, 102 S.Ct. 1114, and thus, plaintiffs were injured in fact and had

standing to sue because of "deprivation of information about housing availability."

24. In *Molovinsky v. Fair Employment Council*, 683 A.2d 142 (1996), the DC Court of Appeals upheld

the theory of tester liability.  In *Molovinsky*, in response to complaints that a prospective employer,

Executive Suites, was violating the rights of a Mr. Henderson by harassing him during a job

application violating Mr. Henderson's rights under DC law, the DC Fair Employment Commission

designed a gender discrimination program and arranged four testers, two men and a woman, to pose

as job seekers and visit Executive Suite.  *Id.* at 145.

25. As each tester had the same experience as Mr. Molovinsky, the FEC sued Executive Suites,

alleging violation of the employment laws. The jury awarded verdicts, including punitive damages,

for not just Mr. Henderson, but also the individual testers. *Id.* at 145.

26. Citing *Havens*, the DC Court of Appeals upheld the standing of the plaintiffs to bring suit, even

though they had engaged in the interviews for the sole purpose of investigating whether or not

unlawful activity was taking place.

27. Consistent with the above case law, the legislative history of the CPPA's 2000 amendments

creating Representative Actions makes it clear that reliance is not required.

28. According to the 2012 DCCPPA Amendment Committee Report (the "Report"), "tester standing"

was created to allow consumers who offer to purchase, or actually purchase, products or services

with the intent of determining whether those products or services are what they claim to be, to file

suits against untruthful merchants. See D.C. Council, Report on Bill 19-0581 at 4-5 (November 28,

2012).  The Report states that "consumers need not actually have been misled by a

misrepresentation regarding a consumer good or service to have suffered an injury-in-fact giving

rise to an actionable claim." *Id.* at 4.  The Report further states that "[l]ike the testers in *Havens* and

*Molovinsky*, D.C. consumers must be allowed to offer to purchase, or actually purchase, products or services with the intent of determining whether those products or services are what they claim to be." *Id.* at 5.

29. Consistent with the above precedent, in *Grayson v. AT & T Corp.*, 15 A. 3d 219 (DC 2011), a former employee of a telecommunications firm was aware that the firm was failing to escheat unused funds on prepaid telephone calling cards to the District of Columbia, as required by law. *Id.* at 249-252.

30. In order to have standing to sue the company to cease this practice (again, with full awareness the product was 'defective', and with no intention of using the product), the *Grayson* plaintiff purchased such telecommunications card.  *Id.*

31. The DC Court of Appeals, invoking the *Havens* ruling, upheld the standing of said purchaser of the prepaid telephone calling card to sue for alleged violations of the CPPA.  Consistent with *Havens*, the DC Court of Appeals ruled as such even though, as noted above, the plaintiff was an industry insider who knew when he purchased the product that it had the defects at issue.  *Id.*

32. Further, the DC City Council had suspended funding of enforcement by the DC Attorney General's Office of the CPPPA. *Id.* at 240.

33. Therefore, the liberal standing requirements conferred by *Grayson* on private plaintiffs are consistent with the intent of the DC City Council to "provide public interest organizations and private attorneys the ability to seek injunctive relief and disgorgement of ill-gotten gains in the public interest." *Id.* at 240.

34. Post-*Grayson* case law has largely followed *Grayson*'s mandate.  *See Julian Ford v. ChartOne, Inc.*, 908 A.2d 72, 83 (D.C. 2006) (holding that the definition of "consumer transaction" under D.C. Code § 28-3901(a)(7) includes "consumer purchases of business opportunities, and purchase of

medical records for a lawsuit qualifies as purchasing a business opportunity") (emphasis added);

*accord*, *Mostofi v. Mohtaram, Inc.*, 2013 D.C. Super. LEXIS 12 (D.C. Superior Court, November

12, 2013), in which a resident of Maryland bringing a CPPA §3905(k)(1) action, who bypassed

supermarkets in Maryland  to purchase olive oil in the District of Columbia, was held to have

standing "to test whether that EVOO was "true extra virgin olive oil," with the court noting:

> Ultimately, neither the intent of Plaintiff nor whether he 'manufactured'
> standing are dispositive of the question. No precedent establishes that the
> Court must apply a 'good faith' standard to the actions of a plaintiff in
> order to find that the standing requirement has been met. Further,
> Plaintiff . . .  does not need to demonstrate that he suffered any physical,
> emotional, or monetary injury; an actual or immediate statutory violation
> is sufficient to establish an injury-in-fact. . . . The motivations of the
> plaintiff in *Julian Ford* are similar to Plaintiff; both bought a good for the
> purpose of advancing litigation. At the very least, Plaintiff qualifies as a
> consumer that engaged in a consumer transaction for the purchase of a
> business opportunity as defined in Julian Ford . . . In the alternative,
> Plaintiff bought a bottle of Pompeian for personal consumption or to test
> that bottle, which does not disqualify Plaintiff under ….. D.C. Code § 28-
> 3901(a)(7).
> . . . .
> If there is a genuine dispute of material fact whether Defendant
> misrepresented and sold EVOO of Italian origin, the harm would not be
> self-inflicted upon Plaintiff's purchase of Pompeian; rather the harm of an
> unlawful trade practice occurred once Defendant offered to sell that bottle
> of Pompeian in its store."

*Id.* at *7 (emphasis added, internal citations omitted).

35. In short, § 3905(k)(1) does not require reliance on the part of the plaintiff.  More significantly, for

the instant case, the language of the statute references purchases to "test" or to "evaluate." An

evaluation by counsel is attached to this Complaint.

## FACTUAL ALLEGATIONS

36. Upon information and belief, Defendant manufactures, markets, advertises, labels, distributes, and

13

sells Klorane – Dry Shampoo with Oat Milk Ultra Gentle – All Hair Types, the Product.[2]

37. Dry shampoo products are considered cosmetics that are regulated by the FDA.[3]

38. On October 31, 2022, Valisure, an analytical pharmacy and consumer protection organization located in New Haven, Connecticut, petitioned the FDA to address dangerous levels of benzene in dry shampoos based upon rigorous testing the organization had conducted on a number of dry shampoo products.[4]  For the majority of the products tested, Valisure utilized standard, accepted methods of gas chromatography-mass spectrometry ("GC-MS") methods of measurement to determine the levels of benzene.[5]

39. Further, Valisure had two brands – which it had previously tested using GC-MS along with the other brands – tested for the presence of benzene by Syft Technologies at its mobile lab in San Francisco using Syft's SIFT-MS mass spectrometry technology.[6]  In its petition, Valisure explains that the SIFT-MS technology yields more accurate results than the standard, accepted GC-MS measurement technology, in that the latter typically understates the benzene concentration found in tested samples.  Thus, Valisure states,

> Although GC-MS is an industry standard approach and was utilized by Valisure in this Petition, the sample preparation required in GC-MS analysis may allow some benzene to escape detection and, therefore, potentially underestimate the amount of contamination. By contrast, SIFT-MS does not require sample preparation, thereby enabling real-time quantitative analysis of dry shampoo spray directly, allowing the investigation of real-world conditions and the potential risks consumers are exposed to with these kinds of contaminated products.[7]

---

[2] *Id.*; *see also* https://www.kloraneusa.com (last reviewed March 6, 2023).
[3] Citizen Petition at 1.
[4] See *id.*
[5]  *Id.* at 6.
[6] Citizen Petition at 12.
[7] Citizen Petition at 9 (internal footnotes omitted).

40. In the petition, Valisure explained certain refinements of its CG-MS testing that it undertook – prior to the testing detailed in the petition – to prevent earlier identified breakdown of suspected analytes resulting from higher GC over temperatures, as follows:

> [ . . . ] Valisure has noted in previous FDA Citizen Petitions that some GC-MS methodologies can lead ingredients to break down into suspected analyte due to elevated GC oven temperatures. Valisure identified such a situation in its September 13, 2019 FDA Citizen Petition regarding the drug ranitidine, and Valisure therefore developed modifications to the existing methodologies to lower temperature and prevent degradation. The GC-MS methodologies described in this petition utilized body temperature (37°C) for oven incubation. 40°C has been previously used for benzene analysis from liquid pharmaceuticals and beverages, and reduced false positive results compared with higher-temperature incubation.[8]

41. The GC-MS benzene testing detailed in Valisure's October 31, 2022 petition was performed in the first quarter of 2022.

42. Using this GC-MS measurement, Valisure "analyzed148 unique batches [lots] from 34 brands of dry shampoo products." [9]  Valisure found that certain dry shampoo products, including the Product, contain benzene, with values up to 158 parts per million ("ppm").[10]

43.  In its petition, Valisure first shows data from the GC-MS analysis of benzene by directly sampling contaminated air after spraying dry shampoo products, which suggests the potential for short- and long-term inhalation exposure to high levels of benzene.[11]  The presence of this known human carcinogen in dry shampoo products that are regularly used indoors and in large volumes makes this finding especially troubling.[12]

---

[8] Id. at 7 (footnotes omitted).

[9] Id. at 12.

[10] *Id.* at 2, 13-17.

[11] Id.

[12] *Id.*

44. Among other GC-MS results showing benzene in Klorane dry shampoos in particular (among other dry shampoos), Valisure found a benzene concentration in the Klorane – Dry Shampoo with Oat Milk Ultra Gentle – All Hair Types variety purchased by Ms. Aragone of 5.72 ppm.  Valisure also found a benzene concentration of 3.07 ppm on first spray for another Klorane variety, Dry Shampoo with Nettle Oil Control – Oily Hair.  Each of these results exceeds the 2 ppm previously described permissible level.

45. As noted above, in addition, Valisure sought confirmation of its GC-MS results through testing of two dry shampoo brands – Demert's Not Your Mother's and Batiste – by Syft[13] Technologies using its SIFT-MS measurement technology.  Valisure did so because of alleged loss of analyte in GC-MS testing process.  Thus, Valisure explains,

> Although there are observed inconsistencies in dry shampoo products, the comparison of the SIFT-MS to GC-MS analysis of the same bottles with subsequent sprays and other bottles of the same brand, suggests that the GC-MS method described in this Petition may significantly underestimate the concentrations of benzene in such aerosol products. The SIFT-MS direct analysis system that eliminates sample prep appears to detect benzene in these aerosol products at approximately 10 – 50 times higher concentrations.[14]

46. In particular, Syft found a benzene concentration of 345 ppm for Demert's Not Your Mother's (NYM) dry shampoo upon first spray SYFT-MS testing.  This contrasted with an average benzene concentration of 35.31 ppm using GC-MS measurement of first spray testing for 26 analyzed NYM bottles, and with an average concentration of 20.11 ppm using GC-MS measurement of subsequent spray testing for the 26 bottles.[15]  Similarly Syft found a benzene concentration of 67 ppm for Batiste's dry shampoo upon first spray SYFT-MS testing.  This contrasted with an average benzene

---

[13] cite insert link Syft Technologies footnote, and insert brief description.
[14] *Id*. at 21.
[15] Id. at 21.

concentration of 1.46 ppm using GC-MS upon first spray testing for 27 bottles.  Thus, for each

brand the Syft results were markedly higher than the GC-MS results.

47. Benzene is used primarily in the chemical and pharmaceutical industries, as a starting material and

intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States

source of benzene is petroleum. The health hazards of benzene have been recognized for over 100

years.

48. According to the National Toxicology Program ("NTP"), benzene is "known to be a human

carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[16]  Benzene

has also been "found to be carcinogenic to humans" by the International Agency for Research on

Cancer ("IARC").[17]  Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be

carcinogenic to humans (Group 1), a finding that has stood since that time."[18] As noted by the

IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity
> of benzene based on sufficient evidence of carcinogenicity in humans, sufficient
> evidence of carcinogenicity in experimental animals, and strong mechanistic
> evidence. . . . In particular, benzene is metabolically activated to electrophilic
> metabolites; induces oxidative stress and associated oxidative damage to DNA; is
> genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive;
> alters cell proliferation, cell death, or nutrient supply; and modulates receptor-
> mediated effects.[19]

49. The Centers for Disease Control and Prevention ("CDC") states that the Department of Health and

---

[16] Benzene, Report on Carcinogens, Fourteenth Edition, DEPT. OF HEALTH AND HUMAN SERVICES (Nov. 3, 2016), *available at* https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf (last reviewed February 16th, 2023).
[17] Benzene, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Volume 120 (2018) *available at* https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a094f45da6d27cc.pdf) (last reviewed February 16 2023).
[18] *Id.*
[19] *Id.*

Human Services has determined that benzene causes cancer in humans.[20] The World Health Organization ("WHO") and the IARC have classified benzene as a Group 1 compound, thereby defining it as "carcinogenic to humans."[21]

50.   The FDA currently recognizes the high danger of this compound and lists it as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity. . . However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted" and benzene is restricted under such guidance to 2 ppm.[22]

51. The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[23]

52. As previously stated, the subject products are considered cosmetics, which the FDCA defines by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance[.]" Federal Food, Drug, and Cosmetic Act § 201(i).

---

[20] Citizen Petition at 1, *citing* Centers for Disease Control and Prevention, Facts About Benzene (2018), *available at* https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last reviewed February 16, 2023).
[21] *Id.* (citing International Agency for Research on Cancer and World Health Organization, IARC Monographs on the Identification of Carcinogenic Hazards to Humans, *available at* https://monographs.iarc.who.int/list-of-classifications (last reviewed February 16, 2023).
[22] *Id.* (citing Food and Drug Administration, Q3C – Tables and List Guidance for Industry (2018), *available at* https://www.fda.gov/media/133650/download (last reviewed February 16 2023).
[23] *Id.* at 2 (*citing* 4 Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health (NIOSH), Benzene (October 30, 2019), *available at*  https://www.cdc.gov/niosh/npg/npgd0049.html (last reviewed February 16, 2023); Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health, BENZENE: Systemic Agent (2011), *available at* https://www.cdc.gov/niosh/ershdb/emergencyresponsecard_29750032.html) (last reviewed February 16, 2023).

"Cosmetic companies have a legal responsibility for the safety of their products and ingredients."[24]

53. The Product is not a drug and contains no active pharmaceutical ingredient for therapeutic purposes. Thus, *any* amount of benzene is unacceptable and should not be employed in the manufacture of the Product.

54. Defendant's failure to control for benzene contamination and minimized notification of the importance and risks of benzene in its adulterated Product constitutes unfair and deceptive conduct.

55. The DC General Public was injured in the amount of the full purchase price of the Product because the Product is worthless, as it is adulterated and contains the known human carcinogen, benzene, and Defendant failed to warn consumers of this fact. Such illegally sold products are worthless and have no value.

56. As the Product exposes consumers to benzene, sometimes, depending on the Lot, above the legal limit for drugs (which the Product is not), the Product is not fit for use by humans. Therefore, the DC General Public is entitled to injunctive relief.

57. The manufacture of any misbranded or adulterated cosmetic is prohibited under federal law[25] and District of Columbia law.[26]

58. The introduction into commerce of any misbranded or adulterated cosmetic is similarly prohibited.[27]

---

[24] Cosmetic Safety Q&A: Personal Care Products, *available at* https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personal-care-products#:~:text=Cosmetic%20companies%20have%20a%20legal,product%20affects%20how%20you%20look (last reviewed February 16, 2023).
[25] 21 U.S.C § 331(g).
[26] D.C. Code § 28-3904(x) (see p 6, above).
[27] 21 U.S.C. §331(a); D.C. Code § 28-3904(x).

59. The receipt in interstate commerce of any adulterated or misbranded cosmetic is also unlawful.[28]

60. Among the ways a cosmetic may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or
> . . . whereby it may have been rendered injurious to health;[29]

61. A cosmetic is misbranded "[i]f its labeling is false or misleading in any particular."[30]

62. Defendant did not disclose that benzene, a known human carcinogen, is present in the Product purchased by Aragone. As a result of benzene contamination in the Product, it is considered adulterated and misbranded. The FDA instructs that there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[31]

63.  Defendant wrongfully advertised and sold the Product without any labeling to indicate to consumers that it contains benzene, as indicated in the image at Paragraph 18, above.

64. Plaintiff Aragone notes that the labeling on the back of the bottle contains "Warnings," none of which are for the presence of a carcinogenic ingredient.

65. Aragone has standing to represent the General Public of the District of Columbia because there is sufficient similarity between the specific Product she purchased and other Lots of the Product she did not purchase.  Specifically, each and every Lot of Defendant's Product (i)  is marketed in substantially the same way—as dry shampoo— and (ii) fails to include labeling  indicating to consumers that the Product contains the known human carcinogen, benzene, at levels that are dangerous to human health when used as directed. Accordingly, the misleading effects of all of the

---

[28] 21 U.S.C. §331(c); *see also* D.C. Code § 28-3904(x).
[29] 21 U.S.C. §351(a)(2)(B).
[30] 21 U.S.C. §352(a)(1).
[31] 26 FDA, Q3C–2017 Tables and List Guidance for Industry (June 2017), *available at* https://www.fda.gov/media/71737/download (last reviewed February 11, 2023).

Product's labels are substantially the same.

66.  The DC General Public has been and will continue to be deceived or misled by Defendant's

deceptive representations. The DC General Public has been damaged in its purchases of the Product

and has been deceived into purchasing Product that it believed, based on Defendant's

representations, was of a certain quality and had certain benefits, when in fact, it is and does not.

67. As a result of Defendant's deceptive and unlawful representations, consumers in the District of

Columbia have purchased products that do not perform as advertised.

68. Aragone brings this action on behalf of herself and other similarly situated consumers in the

District of Columbia who purchased the Product in order to halt the dissemination of this false,

misleading and deceptive advertising message and correct the false and misleading perception it has

created in the minds of consumers, and to halt Defendant's unlawful sale of the Product in violation

of the CPPA. Based on the CPPA, Plaintiff seeks statutory relief for herself and injunctive relief for

all consumers, members of the DC General Public, who purchased the Product.


**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**
**Section 3904(x)**

69.  Plaintiff Aragone incorporates the allegations of paragraphs 1 through 76 as though fully set forth

herein, and alleges further:

70. As noted above, the CPPA, § 28-3904, provides that is it a violation "whether or not any consumer

is in fact misled, deceived or damaged thereby," for any person to, *inter alia*, "sell consumer goods

in a condition or manner not consistent with state or federal law."

71. Section 313 of the D.C. UCC (DC Code § 28:313 provides:

(1) Express warranties by the seller are created as follows:

    (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform the affirmation or promise.

    (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

    (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation does not create a warranty.

51. D.C. Code § 28-314 provides:

    (a) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section, the serving for value of food or drink to the consumers either on the premises or elsewhere is a sale.

    (b) Goods to be merchantable must be at least such as . . .

    (i) In the case of fungible goods, are of fair average quality within the description; and

    (ii) Are fit for the ordinary purposes for which such goods are used; and

    (iii) Are adequately contained, packaged, and labeled as the agreement may require; and

    (iv) Conform to the promises or affirmations of fact made on the container or label, if any.

72. Plaintiff Aragone and DC consumers have purchased the Product from the Defendant.  The above-referenced warranties apply to the Product.  Defendant has failed to honor these warranties.

73. The Product is not merchantable because it is neither fit for the ordinary purpose for which such good is used, nor conforms to the promises or affirmations covered.

74.  28:2-607 (3) (A) requires that a buyer must within a "reasonable time after he discovers or should

have discovered any breach notify the seller of breach or be barred from any remedy."

75. Plaintiff's counsel, on behalf of Plaintiff and the D.C. General Public, has given such notice.

76. Defendant's breaches of its Express Warranties and the Implied Warranty of Merchantability, and its sale of consumer goods in a condition and in a manner inconsistent with D.C. law and contrary to the operation and requirements of federal law, constitute unlawful trade practices, which violate the rights of the D.C. consumers, including the Plaintiff, protected by the CPPA.  D.C. Code § 28-3904(x).

**Count 2**
**Violations of the CPPA –**
**Various Subsections**

77. Plaintiff Aragone incorporates the allegations of paragraphs 1 through 76 as though fully set forth herein, and alleges further:

78.  By marketing the Product in the manner described above, the Defendant violated the various provisions of Section 3904 of the CPPA, set forth in more detail in paragraph 13, above.

79.   Such violations are actionable under the CPPA, and make the relief requested below appropriate.

**Count 3**
**Violations of the DC Commercial Code**

80. Plaintiff Aragone incorporates the allegations of paragraphs 1 through 76 as though fully set forth herein, in particular those with respect to the DC Commercial Code, and alleges further:

81. The breaches of the DC Commercial Code as set forth above constitute an independent cause of action, for which the Plaintiff seeks damages on his own behalf, as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, as to Counts 1, 2 and 3 of the Complaint, Plaintiff Aragone, on behalf of the General Public of the District of Columbia, asks this Court to award:

-     statutory damages, trebled, for Plaintiff, except that Plaintiff disclaims any damages in excess of $74,000;

-     attorneys' fees; and

-     an injunction on behalf of the General Public against the Defendant's violations of the CPPA; and

-     any other relief this Court deems just and proper.

Respectfully Submitted

*Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law
DC Bar No 445135
1701 16th Street, N.W.
Suite 211
Washington DC   20009
Tel: 202.239.2762
T.C. 202.234.0892
thomaswillcox@willcoxlaw.com.co

24

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| Maria Aragone | ) |
| 1701 16th St, N.W., Apt. 520 | ) |
| Washington, D.C. 20009 | ) |
| | ) |
| on behalf of the General Public of the | ) |
| District of Columbia | )    Civil Action No:   2023-CAB-003415 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Pierre Fabre USA Inc. | ) |
| 8 Campus Drive, 2nd Fl. | )    Jury Trial Demanded |
| Parsippany, New Jersey 07054 | ) |
| | ) |
| Registered Agent: | ) |
| CT Corporation System | |
| 289 S. Culver St. | |
| Lawrenceville, Georgia 30046 | |
| | |
| Defendant | |

**AFFIRMATION OF THOMAS C. WILLCOX IN SUPPORT OF COMPLAINT**

1. I, Thomas C Willcox, pursuant 28 USC § 1746 and the unsworn penalties of perjury, and to the best of my knowledge and belief, affirm the following:

2. I am a Member of the District of Columbia and New York Bars.

3. I have read and evaluated the materials supporting the Complaint.

4. On the basis of this review, and other materials cited in the complaint, it does not violate Rule 11 of the DC Rules of Civil Procedure.   Further, I believe that the case, if brought to trial, would be meritorious.

5.  An expert report will be provided to the court and the defendant in this action consistent with
    any scheduling order issued by the court.

Dated: June 11, 2023